## ALEXANDER S. JOHNSTON AND ANOTHER v. ROBERT MILLS AND ANOTHER.

Johnston and Dewberry being indebted on account to R. & D. G. Mills, assigned to them a note made by Hayne payable to and endorsed by Cox; by the terms of the assignment the amount of the note was placed to the credit of Johnston & Dewberry on the aforesaid account, and the latter agreed to hold themselves ultimately responsible with Hayne & Cox; *held,* that the legal effect of Johnston & Dewberry's undertaking was a guarantee that the note was good, and could be collected, so as to complete the extinguishment of their debt to R. & D. G. Mills, which was only conditionally satisfied by such transfer of the note.

Under such a contract, the assumption of Johnston & Dewberry to be ultimately responsible, seems to create rather the obligation of an original undertaking upon a new consideration entirely distinct from that of the note, than that of an ordinary guarantor of a note. In the latter case the guarantor would be liable in the first instance, upon non-payment by the maker and endorser at the maturity of the note.

The guarantee made under the said contract, assigning the note and guaranteeing its payment, imposes on the obligees the duty to use reasonable diligence in its collection by due process of law, in its ordinary and regular course, unless exempted therefrom by a stipulation to the contrary.

In the legal enforcement of the collection of the note against the maker and the endorser, the granting by the plaintiffs to the defendants a valid binding stay of execution for a limited, specified period of time, is no part of the regular ordinary proceeding of a suit instituted for the collection of money in the District Court.

Such a stay of execution granted by a creditor to a principal debtor ordinarily has the effect to release the surety.

Whilst this rule may not apply to this case in all its technical force, still it shows the importance attached to such stipulated delay in collection, in a case where there are relations of mutual duties and obligation between parties.

If a party who is bound to the exercise of reasonable diligence in the ordinary regular course of law, as were the plaintiffs in this case, should give such a stay, he does it at his own risk of losing the amount he might have collected but for the stay.

In such a case, on a question of liability by the guarantors, it is incumbent on the obligees to show not only their failure to collect the note, but, if it appear that they have departed from the regular course of the law by giving a stay, the burthen is imposed upon them to show that their failure to collect was not in whole or in part caused by the stay given.

The court, by its instructions to the jury, should have required their verdict to conform to this test to determine the ultimate liability of the guarantors to the payment of the note.

APPEAL from Smith. Tried below before the Hon. John Gregg.

The character of the suit, the nature of the defences, as well as such of the facts as are important to be shown, with a view to a proper comprehension of the points decided, are perhaps sufficiently shown in the opinion itself; yet, in addition thereto it may be further stated, that this suit was instituted, as may be inferred from the record, in the month of September, 1856. Letters of administration on the estate of W. P. Haynes were issued on the 19th day of October, 1853. The record from the county court disclosed the fact that his estate was indebted in the sum of at least nine thousand six hundred dollars, inclusive of the amount of the note, of which the defendants in this suit are alleged to be the guarantors. The *pro rata* distributive share of the creditors, it seems from the record, did not exceed sixteen cents to the dollar.

Moses Cox died in the fall or winter of the year 1853, shortly after the recovery by Robert Mills of the judgment against him and Haynes referred to in the plaintiffs' petition.

On the trial of this cause Ward, a witness in behalf of the defendants, testified that he transacted business for R. & D. G. Mills with Moses Cox after the 12th day of July, 1852, until about the time of his death. He was engaged in attempting to collect money from him. Witness had a large amount of claims against Cox, originally payable to various parties living in the city of New York, which were endorsed and made payable to, and were due to R. & D. G. Mills; they amounted to something less than ten thousand dollars. In order to secure as large payment upon these claims as possible, witness purchased, on or about the 19th day of September, 1853, from Cox a lot and storehouse in the town of Palestine, together with the merchandize therein, to accomplish which it was necessary to pay Cox one thousand dollars in cash, which he did.

Witness further stated that the transaction referred to had no connection with the debt which is the subject matter of this suit;

45Y

and that he knew of no property besides belonging to Cox at the time of his death, otherwise an administration on his estate would have been had. He stated, also, that as the agent of R. & D. G. Mills, he had attempted to collect the note of Haynes & Cox described in the instrument here sued on, by instituting suit against them at the first term of the District Court of Anderson county, after its maturity; that judgment was obtained in September 1853; that he had caused a number of writs of garnishment to issue against persons supposed to be indebted to said Cox; but did not remember to have received any thing on the judgment except that paid by the administrator of Haynes' estate, the amount of which he did not know.

It was agreed between the parties, that Cox was in failing circumstances at the maturity of the note of Hayne endorsed by him as stated; that his affairs continued to grow worse until his death; and that on the 19th day of September, 1853, when the plaintiffs purchased the property referred to by witness Ward, amounting to about $9000, said Cox owned no other means; that a few days after said purchase and payment, as aforesaid, to Cox of the one thousand dollars by the plaintiffs, the said money was levied upon and seized under execution by the sheriff of Anderson county, to satisfy, and was applied in payment of an execution in favor of other parties.

The court instructed the jury to determine from the evidence whether the plaintiffs used due diligence to collect the money on the note, which is alleged never to have been paid by Hayne and Cox; and if they used such diligence, but failed to collect the note, the defendants are bound to pay to the plaintiffs whatever portion of said note said plaintiffs failed to collect. The court further instructed the jury as follows: "if the plaintiffs used the ordinary means of collecting the note (as by instituting suit) and of binding Moses Cox (as by bringing suit to the first term of the court after the note was due,) and that by such diligence the money could not be collected, then the defendants (Dewberry & Johnston) are liable to pay the money due on the judgment, unless the jury believe from the evidence that the plaintiff Mills bought the note from the defendants for the purpose of preventing its collection.

The plaintiffs had the right to prefer their other debts (which may not have been secured) to the one which the defendants had guaranteed; and their settlement with Cox, thereby satisfying the other debts, was not of itself a fraud, unless it was intended to injure Dewberry & Johnston; nor was the payment by the plaintiffs to Cox of money a fraud, if such payment was necessary to procure the satisfaction of the debts due them from Cox.

"If they believe the plaintiffs used ordinary diligence to collect the money, they may find for the plaintiffs; but if they have failed in diligence, or originally bought the note for the purpose of preventing its collection, or took any subsequent step to prevent its collection, they will find for the defendants."

The defendants asked the court to give the following instruction to the jury, which was refused, to wit: "That the contract sued on made the parties, plaintiffs and defendants, occupy the relationship of principal and surety to each other, and that the plaintiffs would not be permitted to do any act which would be prejudicial to the interest of defendants with reference to the matters in controversy; and if the jury believe that after the maturity of the note of W. P. Hayne and endorsed by Moses Cox, the plaintiffs purchased all the property and effects of said Cox, amounting to a sum greatly exceeding the amounts of the notes transferred by defendants, and gave in payment for these claims plaintiffs hold against Moses Cox, and one thousand dollars in cash, and made no effort to secure the notes guaranteed by defendants, they will find for the defendants."

Verdict and judgment for the plaintiffs for the sum of three thousand eight hundred and ninety-four dollars and ninety cents.

The appellants assign as error the charge given by the court, and especially the following portions thereof, to which they specially excepted, to wit: "That if the jury believe the plaintiffs used ordinary diligence to collect the money, they may find for the plaintiffs." Also, the following: "nor was the paying of money to Cox a fraud, if such payment was necessary to procure the satisfaction of debts which Cox owed them."

They also assign as error the court's refusal to give the instructions asked for by them.

*S. G. Smith*, for the appellants.—The learned counsel for the appellees seems to wholly ignore the fact that we appeal to your honors as chancellors, and still persists in citing his authorities from courts of law, which we do not question, and will not come up and discuss with us the equitable defence we insist upon against his claim.

The facts of the case upon which we predicate this defence, are as follows :

On the 12th day of July, 1852, Johnston & Dewberry executed and delivered to R. & D. G. Mills, the following instrument of absolute guarantee, viz :

" Cherokee County, July 12, 1852.

" Whereas, we have transferred and assigned to R. & D. G. Mills, of Galveston, the following notes, viz : the note of James Colthorpe, in favor of Moses Cox, Jr., and by him endorsed, due 8th January last, for eighteen hundred and ninety-one dollars and seventy-seven cents ; and the note of W. P. Hayne, also in favor of and endorsed by Moses Cox, Jr., due 15th January, 1853, for four thousand five hundred and one dollars and fifty cents, which notes are placed to our credit in account with said R. & D. G. Mills ; therefore, it is understood that the said R. & D. G. Mills shall be authorized to use their discretion in arranging for the collection and recovery of these notes, by renewing the same, or by taking other notes of security, in substitution of the note of W. P. Hayne ; provided, the said Moses Cox, Jr., shall be held and remain bound ; and we hereby agree to hold ourselves ultimately responsible with the above parties.

" JOHNSTON & DEWBERRY."

The above note of $4501 50, against Hayne and Cox, (thus guaranteed and transferred,) was, soon after its maturity, put in suit, and on the 24th day of September, 1853, judgment was rendered upon it in the name of R. & D. G. Mills, by the District Court of Anderson county, against Hayne and Cox, for the balance due on the note, $3781 58.

The appellees read in evidence in the court below, without objection, a transcript of the suit and judgment just mentioned. That record contains, also, immediately following and forming

part of the judgment entry, (transcript, p. 39,) this significant and important clause: "and by agreement of the plaintiffs, by attorney, the issuance of execution hereon, as to defendant Cox, is stayed until the first of February next."

By this act of the appellees, done in open court, and of record by agreement, binding upon them, we insist, and will forever insist, that the appellants were released and discharged as endorsers and guarantors. It matters not whether the guarantors were benefitted or prejudiced thereby, still they were released, and so great judges have decided, in similar cases.

The appellants had no right to give that stay of execution; it was not within the margin of their right to do so, unless they did so at their own peril. The rule on this subject, I know, is familiar to your honors. It must be familiar, and if there was a case in the world in which the rule ought to apply, it is in this case; because, before the expiration of the stay, Cox and Hayne both died, and died insolvent.

In the court below, Johnston & Dewberry moved his honor to charge the jury, "That the contract sued upon made the parties occupy the relationship of principal and surety to each other, and that the plaintiffs would not be permitted to do any act that would be prejudicial to the interest of the defendants with reference to the matters in controversy."

This charge was refused by the judge, and in respect thereof we ask that the ruling may be reviewed by this appellate tribunal, and the question determined, whether the creditor, to whom collateral has been transferred with guaranty, can, by his own agreement, upon the record, give time to one of the principal debtors, without releasing the guarantors? And when the creditor, in his suit against the guarantor, brings into court and reads in evidence, in his own behalf, and without objection, the transcript of the judgment against the principal debtor, containing also the record that such time has been given by stay of execution entered upon the record, will not the court give force and effect to such evidence as fully as if pleaded and read in evidence by the guarantor? Is such an agreement binding on the creditor? Does it so tie up his hand of diligence as that were an execution to be issued, either at

the instance of the creditor or the surety, the principal could en-
join it until the expiration of the stay? Does it not change the
relations between the creditor and the guarantor, growing cut of
the contract?

The appellees pleaded in the District Court the judgment re-
covered by them in the suit against Cox and Hayne, and we
think the entire record of that case is made a part of the petition
in this case. Under the pleading of appellees, it was given in
evidence. If the answer of appellants was insufficient for the
purpose of admitting the testimony of giving time by appellees to
Cox, it was cured by the averments in the petition. If one party
expressly aver a material fact, omitted on the other side, the omis-
sion is cured. (Grimes v. Haygood, 19 Tex., 246–9.) It is
sufficient if the matter relied on for the defence, is averred in the
petition. (Boynton v. Tidwell, 18 Tex., 118–121.)

These are beautiful and interesting questions, fairly presented
by the record, and we beg leave to call the attention of the court
to a few leading cases bearing upon them.

In Samuel v. Howarth, 3 Merivale's Reports, page 272, Lord
Eldon says, "The rule is this, that if the creditor, without the
consent of the surety, gives time to the principal debtor, by so
doing he discharges the surety; that is, if time is given by virtue
of positive contract between the creditor and the principal, not
where the creditor is merely inactive. And in the case put,
(which was a guarantee,) the surety is held to be discharged, for
this reason; because the creditor, by so giving time to the prin-
cipal, has put it out of the power of the surety to consider whether
he will have recourse to his remedy against the principal or not;
and because he, in fact, cannot have the same remedy against
the principal as he would have had under the original contract."

In the same opinion, he says further: "The creditor has no
right—it is against the faith of his contract—to give time to the
principal, even though for the manifest benefit of the surety, with-
out the consent of the surety."

In Sneed v. White, 3 J. J. Marshall (Ky.) Rep., 526, the
court say, "that a surety's consent to an indulgence of the prin-

Johnston v. Mills.

cipal, cannot be inferred from his silence or neutrality, but must be evinced by some positive act."

In Cook v. Southwick, 9 Tex. Rep., 620, the Supreme Court say, "Mere delay, without fraud or agreement with the principal, does not discharge the surety," clearly implying that the surety would be discharged, if the delay is by agreement.

In Story on Promissory Notes, § 414, it is said: "The reason of the rule as thus qualified, is (and it seems equally applicable to all cases) that the holder by such agreement undertakes that he will give credit to the maker during the period of the delay, and thereby tacitly agrees that the endorsers shall not be called upon to pay the note in the mean time; since, if they are called upon, and do so pay, they will instantly have a right of action over against the maker for their reimbursement, and thus the object of the agreement for delay would be frustrated. On the other hand, the endorsers, by such agreement for credit or delay for a prolonged period, without their concurrence, would, if the doctrine were not as above stated, be held liable for a period beyond their original contract, and might suffer damage thereby; or, at all events, would be bound by a different contract from that into which they had entered," &c.

In § 485, the author further says: "Many of the acts and omissions which will discharge an endorser from his responsibility, apply with equal force to the case of a guaranty. * * 3. By the holder's giving time to the maker, and thereby impairing the rights, or increasing the risk of the guarantor."

The attention of the court is also invited to White & Tudor's Equity Cases, (72 Law Library, 355, 357, 359, 367.) American Leading Cases in Equity, vol. 2, 261–2; Nisbit v. Smith, 2 Brown's Ch. Rep., 581; 8 Tex., 66, and 11 Tex., 694.

"It is well settled that wherever a creditor, in pursuance of a valid agreement for such a purpose, gives time for payment to the principal debtor on a bond or other security, the latter will be held discharged in equity, though he might still be bound in law. In such a case it is of no consequence whether the surety has sustained any actual damage or not. Nay, the arrangement may be for his benefit; and yet he will, in equity, be discharged; for

the rights of the creditor, as to his debtor, have been voluntarily suspended, and of course the relation of the surety to both changed without his consent. Under such circumstances, the surety has a right to restrain the creditor from proceeding at law against him to recover the debt, and a perpetual injunction constitutes the true and effective remedy." (2 Story's Eq. Juris., § 883.)

In 7th Peters, 128, Judge Story says: "He who receives any note upon which third persons are responsible, as a conditional payment of a debt due himself, is bound to use due diligence to collect it of the party thereto, at maturity, otherwise by his laches the debt will be discharged."

*T. J. Word*, for the appellees.—This suit was based on the written guarantee of appellants to secure the payment of two notes, one of which was paid off, and suit was brought at the first term of the court after the maturity of the note of Hayne, endorsed by Cox. Service was not had at the first term, but was perfected before the next, and a judgment obtained against the maker Hayne and the endorser Cox at the second term. Hayne died a short time after judgment, and his estate proved insolvent; a portion of the judgment was paid, however, by the assets of Hayne. Cox was wholly insolvent at the rendition of the judgment. Ward proves that, after exhausting all Cox's means, he still owed the appellees some large amount, and that, too, on debts due before the guarantee was made. Both Hayne and Cox were in failing circumstances, and Cox became wholly insolvent before judgment, died soon after, and his estate was so hopelessly insolvent that no administration was ever had on his estate.

It is confidently believed that the plaintiffs below did all they were required to do, to fix the liability of the guarantors. They were not bound to sue the makers. They had large discretion. And as to construction of guarantee, see 7 Peters, U. S. Rep., Douglass v. Reynolds, 112, 122–3, and bottom of page 124–5.

They were not bound to sue the maker Hayne and endorser Cox. (See 4 Smedes & Marshall, Miss. Rep., 91, 97, Wren v. Pearce; 3 Yerger, Tenn. Rep., 330, 335, Taylor v. Ross; 4 do., 196–7, Bell v. Johnson.)

Mere forbearance will not release guarantors. (4 Smedes & Marshall, R., 165, 171, Johnson v. Bank.)

As to liability of guarantors, see 4 Texas Rep., 275, Carr v. Rowland, 276–7; and 9 Texas Rep., 615, 617, Cook v. Southwick; 10 Peters, U. S. Rep., 482, 495–6, Lee v. Deek; and 2 Conn. R., 417; 7 Cranch, 69 and 97, Russel v. John J. Clark, exec'r. These authorities, it is believed, settle this case for the present defendants, and being unable to discover any error in the proceedings of the court below, I submit the case and respectfully ask damages for delay.

But opposing counsel have paid me the equivocal compliment of referring to my brief for authority to support their position. This grows out of a misapprehension of the case, and an utter misconstruction of the guarantee upon which the suit was brought. They assume, in the face of the plain language of the instrument, and against all rules of construing such instruments that it constitutes the Messrs. Mills the agents of Johnston & Dewbery for the collection of the debts guaranteed. This is not so; no agency is created—none was intended. The securing of a debt due the Mills' was the object of the guarantee. And this erroneous construction of the instrument leads counsel into all the errors of their argument and misapplication of authorities. The case of Murphy v. Sloan, (24 Miss. Rep., 658,) the only authority referred to by opposing counsel, has not one feature similar to the case at bar. That case was a clear case of agency. Sloan, an attorney, undertook to collect a judgment for Murphy for one-half he could make out of the judgment, and he purchased the property levied upon himself, and attempted to hold it against the plaintiff. This the Mississippi court says he could not do. And that is the case relied on to revise this case.

The true rule is, "that the words of the guarantee are to be taken as strongly against the guarantor as the sense will admit." (7 Peters' Rep., 122, Douglass v. Reynolds.) Apply this rule, (and I know of no exception,) and the appellants cannot escape an affirmance of the judgment, and that, too, with damages.

There is no real pretence for bringing this case to this court but delay. It is believed that the whole lengthy argument on

the opposite side is based on a supposed case, not the case found in this record. And I again repeat, we ought to have damages for delay.

\*    \*    \*    \*    \*    \*    \*

But again, the brief of the appellants assumes that the stay of execution released Johnston & Dewbery, the guarantors. But such cannot be the case. The guarantee authorized Mills to extend time to Cox. It authorized large discretion in Mills. And, in fact, Cox was wholly insolvent at the trial, and although no execution issued, (there being nothing to levy,) yet garnishments issued at once against the debtors of Cox, and money was made on the garnishments.

And the same authority (Hubert v. Bartlett, 9 Tex., 97) above referred to, and the same principle of law applies to this objection. It was not raised below, and cannot be raised here. And if it had been raised, it might have been answered by showing on the trial that the appellants consented to and advised the stay of execution upon the condition that Cox should give up the names of his debtors against whom the garnishments could be issued. The objection not being raised below where it might have been answered, cannot be entertained here where it cannot be obviated.

ROBERTS, J.—This is a suit by appellees against appellants upon a written contract. The appellants presented in their defence two issues, one of which was presented by filing a general denial, and the other by a special plea. The defence under that one made by the special plea was negatived and disregarded by the court in the charge to the jury, so that the cause was tried upon the issue made by defendants' general denial of the facts alleged in the petition.

The contract set out in the petition reads as follows, to wit:

"Cherokee county, July 12th, 1852.

"Whereas, we have transferred and assigned to R. & D. G. Mills, of the city of Galveston, the following notes, viz: the note of James Colthorpe in favor of Moses Cox, Jr., and by him endorsed, due 8th of June, last, for eighteen hundred and ninety-one and seventy-seven one-hundredth dollars, and the note of W. P.

Hayne, also in favor of, and endorsed by Moses Cox, Jr., due 15th of January, 1853, for four thousand five hundred and one and fifty-one-hundredth dollars; which notes are placed to our credit in account with R. & D. G. Mills; therefore, it is understood that the said R. & D. G. Mills shall be authorized to use their discretion in arranging for the collection and recovery of these notes, by renewing of the same, or by taking of other notes or security in substitution of the note of W. P. Hayne, provided, that the said Moses Cox, Jr., shall be held and remain bound, and we hereby agree to hold ourselves ultimately responsible with the above parties.        (Signed)        "JOHNSTON & DEWBERRY."

The petition alleges that R. & D. G. Mills caused suit to be instituted in the name of Robert Mills, upon the note made by Hayne and endorsed by Cox, in due time, and regularly prosecuted to judgment; that Hayne and Cox both became insolvent and died; that they have not collected any money upon the said note and judgment; and that they could collect nothing by the exercise of a sound and prudent discretion by virtue of the judgment. In the amended petition it is averred that the plaintiffs "have in every particular complied with and performed their undertaking and agreement, by using all legal means, and taking all steps, which the law requires or would permit, to collect the said sums of money in said instrument in writing mentioned and specified." These taken together certainly amount to an allegation that R. & D. G. Mills had used reasonable diligence in the collection of said note on Hayne and Cox, and had failed to collect it, or any part of it. The general denial put in issue these facts, and imposed upon the plaintiffs the burthen of their proof, if it was necessary for the plaintiffs to allege them to present a cause of action. The only allegation about which there could be any question as to its necessity, is that R. & D. G. Mills had used reasonable diligence in the collection of this note. The cause was tried on the supposition that it was necessary for R. & D. G. Mills to make this allegation to present a cause of action against the defendants. This is fully evidenced by the proof adduced by plaintiffs and the order of its introduction, as well as by the charge of the court, which made the case turn upon the question whether or not the

jury were satisfied of its truth from the evidence. We think the allegation was necessary. The discretion given to R. & D. G. Mills in arranging for the collection and recovery of the note, was in relation to renewing it, or to take other notes or security in substitution for it. · Neither of these things was done, and therefore the discretion expressed in the instrument was not exercised, and need not be further noticed. The Colthorpe note is not involved in the litigation. The legal effect of the balance of the instrument, and the respective duties and obligations imposed upon the parties to it, by its execution on the one hand and by its acceptance on the other, may be arrived at by considering first the nature of the consideration which passed between the parties as the foundation of the contract, and secondly, the nature of the promise contained in it. The terms of the instrument show that the consideration was not any benefit to Cox or Hayne, or any matter having any connection with the original consideration of the note made by Hayne, and endorsed by Cox, or of its endorsement; but that it was a new matter entirely passing between R. & D. G. Mills and Johnston & Dewberry. The benefit to Johnston & Dewberry was the amount passed to their credit in account with R. & D. G. Mills. The note being endorsed by Cox, was delivered and received as a conditional payment of Johnston's & Dewberry's debt due to R. & D. G. Mills. The legal interest in the note was passed by delivery to R. & D. G. Mills, and Johnston & Dewberry had received a credit on their account for the amount of it.

The promise of Johnston & Dewberry to remain bound, had for its object a guaranty that this conditional payment should eventuate in an absolute payment of their debt to R. & D. G. Mills. They agreed to remain bound not for the debt of another, but for their own, not for Cox and Hayne but with Cox and Hayne, for that amount of money according to the terms and legal effect of the note, or in other words, that their conditional payment should be rendered absolute by a collection of the note by R. & D. G. Mills from Cox & Hayne. They agreed to remain bound ultimately; that is, not presently, but finally; not in the first instance, but in the last resort. The object of the whole arrange-

ment, as developed upon the face of the contract, was for Johnston & Dewberry to extinguish this amount of their debt due to R. & D. G. Mills. For the consummation of this object, R. & D. G. Mills accepted the attitude of being the actor. And Johnston & Dewberry guaranteed its ultimate success. Now it must necessarily have been contemplated by the parties to this arrangement, that R. & D. G. Mills, for the consummation of this object, would either exercise the discretion expressly conferred, or pursue the usual remedies for collection, (according to the exigencies of the case,) which their position as the legal owners and holders of the note would enable them to adopt.

Under the view here presented of the contract, it can hardly be said that Johnston & Dewberry are ordinary guarantors of a note, for in such case they would be liable in the first instance, upon non-payment by Cox & Hayne at the maturity of the note. (Douglas v. Reynolds, 7 Peters' U. S. R., 128.) Nor can it well be understood that they are sureties for Cox & Hayne. Theirs seem to be more in the nature of an original undertaking upon a new consideration entirely distinct from that of the note. Johnston & Dewberry in effect guarantee the note to be good, and that it can be collected so as to complete the extinguishment of their debt to R. & D. G. Mills.

Such a guarantee imposes on R. & D. G. Mills the duty to use reasonable diligence in the collection, by due process of law, in its ordinary and regular course, in the absence of any stipulation to the contrary. (Edwards on Bills and Notes, 222-3-4-5, 229, 231-3, 235; Curtis v. Smallman, 14 Wend. R., 231; Cooke v. Nathan, 16 Barb. R., 342; Loveland v. Sheppard, 2 Hill R., 139; Leonard v. Vrendenberg, 8 Johns. R., 29.)

Under this view of the case the court below instructed the jury that "they are to determine from the evidence whether the plaintiff used due diligence to collect the money on the note, &c." And again, "if the jury believe that the plaintiffs used ordinary diligence to collect the money, they may find for the plaintiff." "If they believe that they have failed in diligence, they will find for the defendants." It is evident that this was the main question upon the trial.

Plaintiffs, in order to show their diligence in collecting the note, introduced in evidence the transcript of the record of the suit of Robert Mills v. Hayne and Cox, brought upon this note in Anderson county. The judgment contained in said record in favor of Mills, concludes as follows : "and by agreement of the plaintiff by his attorney, the issuance of execution hereon as to defendant Cox is stayed until the first of February next." This judgment was rendered in September, 1853. The judgment against Hayne was by default, and against Cox by *nihil dicit*, upon his pleas being withdrawn; so that it appears that the execution was stayed over four months by agreement between Mills and Cox. What effect this stay had in the immediate enforcement of the judgment against Hayne, need not now be considered under the state of facts as they are now presented. Whether it, of itself, operated as a release of Johnston and Dewberry need not now be considered, because it is not pleaded as such; and because the facts, in addition to those contained in the agreement, (if any such existed,) showing that Johnston and Dewberry were really sureties only, were not alleged or proved.

The question to be considered under the pleadings and evidence is, what effect should this four months stay of the execution as to Cox have upon the question of reasonable diligence in the collection of this note by R. & D. G. Mills? Had Johnston & Dewberry been sureties only, a valid binding stay of execution upon the judgment for a definite time by Mills might ordinarily have been set up in defence as a release of them. (The Commonwealth v. Miller's Admr's, 8 Serg. & R., 452.) This is upon the principle that the contract has been changed. The sureties cannot pay the debt at once and have an immediate remedy against the principal. They would have been placed at disadvantage by the dealings of the plaintiffs, and the law will not permit a calculation to be made of the diminished value of their remaining remedies against the principals, but will hold the sureties released, whether injured or not in fact by the delay. (Samuel v. Howarth, 3 Merivale's R. 272; 2 Story Eq., § 833.) While this rule may not apply to this case in all its technical force, still it shows the importance attached to such stipulated delay in collection in a case

where there are relations of mutual duties and obligation between parties. (Story on Prom. Notes, sec. 485.)

In the case before us, Johnston & Dewberry had given up all legal direct control of this debt to R. & D. G. Mills, who had assumed to use reasonable diligence in collecting it.    Upon the faith of this assumption they had guaranteed that it would be collected.    Their hands were tied.    R. & D. G. Mills alone could move in the matter.    Here there is a relation of mutual duty and obligation which invokes strongly the spirit of the rule which attaches such importance to such delay by the acting party.    'The evidence shows that the time when this stay was given, was a most critical period in reference to the collection of this debt.    Cox had four or five days previously sold all of his property to R. & D. G. Mills in payment of other debts due them, and had received from them in said trade one thousand dollars in cash, which was all that he had; all of which must have been well known to R. & D. G. Mills, or their agent.    Haynes, as the sequel showed, was able to pay but a small portion of all of his debts.    It must have been then quite plain to any one that if this debt was ever collected, it must be done by prompt action.    Haynes had several thousand dollars worth of property then liable to execution, but no execution was issued on the judgment at all, and he died in ten or fifteen days after the adjournment of the court at which the judgment was rendered, and his estate, upon distribution, paid but a small portion of this debt.    The one thousand dollars in possession of Cox was levied on and appropriated to other creditors a few days after this judgment was rendered and stay given.    Without refering to any other fact affecting this question of diligence, it will be sufficient to consider this stay of execution.

Such a stay is not provided for or contemplated as a part of the legal proceedings in the regular process of law in the collection of a debt.    Such a proceeding is contemplated in suits in justice's courts, and, when adopted, the indulgence is supposed to be paid for by the increased security which it is provided shall be given. There is no such proceeding provided for in suits in the District Court.    If it be entered upon the records as a part of the judgment, as in this case, it is by virtue of the agreement of the

parties, and not in pursuance of any prescribed rule of proceeding in the suit. It is because the parties have the power to make an agreement concerning the subject matter of the suit, or the mode of using the process of the court in reference to it; and the court may permit them to give such agreement conclusive sanction by making it a part of the judgment, if, in doing so, no rule of law be infracted. Staying the execution, therefore, is no part of the regular ordinary proceeding of a suit instituted for the collection of money in the District Court. However common it may be in practice, in a legal sense it is extraordinary, and out of the regular course of legal proceeding. That is a matter of legal cognizance. It presents a question of law arising upon the evidence adduced in this case, upon which the court should have instructed the jury. This was especially important in this case; as the common practice of parties in staying executions, of which the jurors were doubtless aware, if unexplained, was well calculated to lead them to the erroneous conclusion that it was a regular step in judicial proceedings. It is a step dependent entirely upon the discretion of the plaintiff in the action, and it places the case out of the regular course of the law. If a party, who is bound to the exercise of reasonable diligence in the ordinary regular course of the law, as were the plaintiffs in this case, should use this discretion and give such stay, he does it at his own risk of losing the amount he might have collected but for the stay. Like any one else who varies from a prescribed and well defined line of duty, in transacting the business entrusted to him, he would be *prima facie* in default by the act which constituted the variance, and must be prepared to show that such act has resulted in no injury, in order to relieve himself from the consequences of his apparent departure from duty.

It was incumbent on R. & D. G. Mills, in order to recover, to show that they had not collected the money on this note, and having shown that in the steps taken by them, they had departed from the regular course of the law by giving a stay as to Cox, that imposed upon them the burthen of showing that their failure to collect was not in whole or in part caused by the stay which they gave. And so the court should have charged the jury, upon the pleadings and

evidence as they are now presented in the record. Had such instruction been given, the jury might have concluded that this debt was not allowed an equal chance in the race after the one thousand dollars in cash which it was shown R. & D. G. Mills had paid to Cox upon other transactions. Indeed they may have been warranted in the conclusion that the act of staying the execution four months as to Cox under the circumstances, was a virtual abandonment of all opportunity to secure this one thousand dollars towards the payment of this debt.

And if a reason should be shown for such a sacrifice, the same facts which would develop that reason might point to the duty of hastening this execution against Hayne as soon as possible, from whom alone after the stay there could have been any reasonable hope of collecting the judgment.

We cannot say that the jury under proper instructions might not have found differently under this issue, and, therefore, upon this point the judgment must be reversed and remanded.

Upon the issue formed by the special plea, we are not prepared to decide that the court erred in the charge given.

This special plea alleges in substance that R. & D. G. Mills became agents for Johnston & Dewberry in the collection of this note, and that they prevented its collection by purchasing all of Cox's property in payment of debts due to themselves, and that in said purchase they, in addition to their debts, paid over to Cox for his property, one thousand dollars in cash, instead of retaining that amount in part discharge of this debt. What further facts should be stated to make this a good plea, if it can so be made at all, it is unnecessary for us to consider. It will suffice now to say, that no authority has been furnished which would justify us in saying that the facts as stated, or as proved, constitute a good defence under this special plea. Only such matters have been noticed as have been deemed necessary to bring properly to view the point here decided, and to disconnect from it matters not properly affecting it.

Reversed and remanded.