Adoue & Lobit v. B. F. Hutches, Jr., et al.

Decided May 29, 1903.

**Notes—Collateral Security—Depreciation in Value—Sale—Liability.**

Where the holder of a note held also certain shares of stock pledged as collateral security for it, with power of sale, but no sale was made by him, and between the maturity of the note and the trial of his action brought thereon the stock depreciated in value, the maker and the sureties of the note were not entitled to have the amount of such depreciation credited in their favor where no demand had been made by them for the sale of the stock, and there was no stipulation in the contract of pledge requiring a sale of the stock at maturity of the note.

Appeal from the District Court of Galveston. Tried below before Hon. Wm. H. Stewart.

*James B. & Chas. J. Stubbs,* for appellants.

*Terry, Ballinger, Smith & Cavin,* for appellees.

PLEASANTS, Associate Justice.—This is a suit upon a note for $650, executed by B. F. Hutches, Jr., on April 1, 1895, and payable to the order of appellants ninety days after date, with interest after maturity at the rate of 10 per cent per annum. The note was indorsed by W. N. Stowe and Julius Runge before its delivery to appellants. When it was indorsed by the said Stowe and Runge there was attached thereto as collateral a certificate of eleven shares of stock in the Texas Bag Company of Galveston. This certificate of stock was delivered to appellants with the note, and they were authorized by a recital in the note to sell said stock in event the note was not paid at maturity and apply the proceeds of such sale to the payment of the note. No payment has ever been made upon the note. When it became due the indorsers signed a written waiver of protest, and paid no further attention to the matter, having been informed by the maker shortly after the maturity of the note that he had settled same by turning over to the appellants the stock which they held as collateral.

This suit was brought by appellants July 1, 1899, against Hutches, Stowe and Runge to recover the amount due upon the note. No demand was made upon said Stowe and Runge for the payment of the note until just before the institution of the suit. The stock held by appellants

as collateral was worth at the maturity of the note as much or more than the amount due upon the note. At the date of the institution of this suit and at the time of the trial in the court below the value of said stock had greatly depreciated, there being ample evidence to sustain the finding of the jury that the loss by depreciation in the value of said stock between the dates before mentioned amounted to $605. The court below instructed the jury that if they found that the stock had depreciated in value after the maturity of the note, the defendants would be entitled to a credit upon said note equal to the amount of such depreciation. Under this instruction the jury found that the depreciation in the value of the stock amounted to the sum of $605, and returned a verdict in favor of plaintiffs for the difference between said sum and the amount due upon the note.

Under appropriate assignments appellants assail that portion of the charge of the court containing the instruction above stated, on the ground that under the facts in evidence the defendants were not entitled to a credit for the amount of depreciation in the value of the stock. We think these assignments should be sustained. There is no evidence of any agreement between the payees and the maker of the note to extend the time of its payment, made without the consent of the sureties, and it is not contended that the delay of appellants in bringing their suit in any way affects the liability of the sureties. The only defense urged in this court is that the maker and the sureties, or at least the sureties, are entitled to a credit for the amount of the depreciation in the value of the collateral. It is a well settled rule that where mortgaged property or other collateral security is intrusted directly to the creditor, he becomes a bailee, and is liable for damages to the trust property caused by his negligence. Douglass v. Mundine, 57 Texas, 347; Johnston v. Mills, 25 Texas, 720; Bank v. Bruhn, 64 Texas, 547.

But this rule neither expressly nor by reasonable implication requires a creditor to sell the security as soon as the debt matures in order to relieve himself of liability for any depreciation in the value of the security that may occur after the maturity of the debt and for which he is in no way responsible, unless, under the stipulations of the mortgage or contract of pledge, he is directed and required to sell the property at the maturity of the debt. When there is no such stipulation, and he is simply authorized to sell, he may sell or not at his option, and is not liable for depreciation in the value of the security not due to any negligence on his part. If, when the debt becomes due, the debtor desires the security sold, he should so notify the creditor, and failing to do this, he can not hold the creditor liable for depreciation in the value of the security due to causes beyond the control of the creditor. The sureties of the debtor would have the same right to demand the sale of the property as the debtor, and their failure to exercise such right would prevent any liability of the creditor to them for depreciation in the value of the property. The case of Williams v. Bank, 44 S. W. Rep., 620, supports the doctrine here announced. The fact that in that case the property was

in the hands of a trustee in no way affects the question. The trustee could only sell at the request of the creditor, or upon the demand of the debtor, and if the failure of the creditor to sell at the maturity of the debt, when the security was placed in his hands, would make him liable for any depreciation that might occur in the value of the property, then his failure to direct and require its sale by the trustee appointed for that purpose, and who could act at his request, would for a like reason render him liable. We think there is no distinction between the two cases.

The case of Colquit v. Stultz, 65 Ga., 305, is directly in point, and fully supports our conclusions. By analogy the same principle is announced in Sinclair v. Weekes, 41 S. W. Rep., 107, and King v. Insurancle Co., 58 Texas, 669.

We think appellees are not, under the facts of this case, entitled to any credit for the depreciation in the value of the stock held by appellants as collateral.

The jury having found upon sufficient evidence that no settlement of the note had been made, the judgment should have been for appellants for the whole amount due upon said note. It follows that the judgment of the court below should be reversed and judgment here rendered for appellants for the entire amount due upon said note, and it is so ordered.

*Reversed and rendered.*